IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MICHAEL ANTHONY MOXLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:13CV460 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Plaintiff Michael Anthony Moxley brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. (Doc. 1.) The parties have filed cross-motions for judgment (Docs. 7, 10), and the administrative record has been certified to the court for review. For the reasons set forth below, the Commissioner's motion will be granted, Moxley's motion will be denied, and this case will be dismissed.

I.   **BACKGROUND**

Moxley filed his application for Disability Insurance Benefits ("DIB") on August 10, 2009, alleging a disability onset

date of October 18, 2004. (Tr. at 119-20.)[1] His application was denied initially (id. at 54) and upon reconsideration (id. at 55). Thereafter, Moxley requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Id. at 74.) Moxley, along with his attorney and a vocational expert ("VE"), attended the subsequent hearing on August 29, 2011. (Id. at 26.) The ALJ ultimately determined that Moxley was not disabled within the meaning of the Act (id. at 20) and, on April 9, 2013, the Appeals Council denied Moxley's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (id. at 1-4).

In rendering his disability determination, the ALJ made the following findings, later adopted by the Commissioner:

1. The claimant met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 18, 2004 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: seizure disorder; degenerative disk disease; hearing loss-right ear; left leg reflex sympathetic dystrophy; depression and anxiety (20 CFR 404.1520(c)).

. . . .

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 5.)

> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. The claimant should avoid concentrated noise and hazards. He needs to stand and stretch 1 to 2 minutes per hour. The claimant was capable of simple, routine, repetitive tasks in a low stress environment, defined as work that does not involve production pace or work deadlines, allows the claimant to work at [his] own pace, and have a predictable schedule.
>
> . . . .
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(Id. at 14-16, 18.)

The ALJ then considered Moxley's age, education, work experience, and the above residual functional capacity ("RFC"), along with the VE's testimony regarding these factors, and determined that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a))." (Id. at 19.) Thus, the ALJ determined that Moxley was not disabled under the meaning of the Act. (Id. at 20.)

3

## II. ANALYSIS

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case *de novo*." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted) (internal brackets omitted) (setting out the standards for judicial review). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (quoting Laws, 368 F.2d at

4

642) (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal brackets omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). The issue before this court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

5

continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy.

Id. The claimant bears the burden as to the first four steps, but the Commissioner bears the burden as to the fifth step. Id. at 472-73.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a disability designation and ends the inquiry. In this regard, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries his burden at each of the first two steps and also meets his burden at step three of establishing an impairment that meets or equals an impairment listed in the regulations, the claimant is disabled, and there is no need to proceed to step four or five. See Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's RFC. Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work based on that RFC, the

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

analysis proceeds to the fifth step, which shifts the burden of proof and "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

In the present case, the ALJ found that Moxley had not engaged in "substantial gainful activity" since his amended alleged onset date. (Tr. at 14.) He therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Moxley suffered from the following severe impairments: seizure disorder; degenerative disk disease; hearing loss-right ear; left leg reflex sympathetic dystrophy; depression; and anxiety. (Id.) The ALJ found at step three that these impairments did not meet or medically equal a disability listing. (Id.) Accordingly, he assessed Moxley's RFC and determined that he could perform light

8

work with several additional limitations. (Id. at 15–16.) Because Moxley's past relevant work as a plumber does not meet these criteria, the ALJ found at step four that he could not return to that work. (Id. at 18.) Thus, the burden shifted to the Commissioner to prove that a "significant number of jobs exist which [Moxley] could perform, despite [his] impairments." Hines, 453 F.3d at 563. The ALJ relied on the testimony of the VE and determined that Moxley could perform the jobs of hand bander, marker II, and photo processer. (Tr. at 19-20.) Thus, the ALJ concluded that Moxley was not disabled under the Act. (Id. at 20.)

Moxley first argues that the ALJ gave the opinions of several doctors – W. Gregory Walton, Albert K. Bartko, S. Michael Tooke, and Leonard D. Nelson, Jr. - too little weight in his decision. He claims the ALJ erred by failing to consider the opinions and treatment notes of Drs. Tooke, Bartko, and Nelson which, according to him, "support a finding of severe impairment under the muscolo-skeletal guidelines." (Doc. 8 at 4.) Additionally, Moxley asserts the ALJ did not consider Dr. Walton's opinion that he was severely disabled in 2010. (Id.)

Dr. Walton indeed diagnosed Moxley with "Major Depressive Disorder" on March 23, 2010. (Tr. at 531.) But, as the Commissioner points out, the ALJ found that Moxley's depression was a severe impairment. (Id. at 14.) Moxley does not identify

9

any other portion of Dr. Walton's report that the ALJ should have considered that would have changed the decision. Thus, it provides no basis for remand.[4]

Moxley observes that Drs. Tooke and Bartko "noted the need for spinal surgery as well as the peripheral pain developed by [Moxley]." (Doc. 8 at 4 (citing Tr. at 218-19, 220-23, 233-34).) He claims Dr. Nelson's records (Tr. at 290-92, 297, 301, 326) also support his contention that he had a severe impairment under the musculo-skeletal guidelines. (Doc. 8 at 4.) With respect to Dr. Tooke, Moxley's assertion that the ALJ failed to address his opinion is inaccurate. The ALJ noted that Dr. Tooke opined that Moxley was temporarily disabled on July 31, 2006, and again on December 14, 2006. (Tr. at 18.) However, he gave Dr. Tooke's opinion little weight, in part because "the objective medical evidence as a whole . . . does not support [that Moxley] was disabled." (Id.) The ALJ relied on substantial objective evidence, including two MRIs and a computed tomography of Moxley's lumbar spine, several physical examinations, and Moxley's own indication that he was taking only over-the-counter pain medication. (Id. at 16-17 (citing id. at 218, 243, 282, 608, 611-12, 615).) Thus, he was justified in discounting Dr. Tooke's opinion evidence.

---

[4] To the extent Dr. Walton opined that Moxley was disabled, this is not a medical opinion entitled to consideration because disability is an issue reserved to the Commissioner. See Thompson v. Astrue, 442 F. App'x 804, 808 (4th Cir. 2011).

10

As for Dr. Bartko, the Commissioner is correct that the treatment note identified by Moxley (id. at 233-34) is not a "medical opinion" under 20 C.F.R. § 404.1527(a). Dr. Bartko's note describes the circumstances of Moxley's injury, records some observations, and notes the results of a physical examination. (Id.) It concludes by noting several treatment options Dr. Bartko discussed with Moxley. (Id. at 234.) However, it provides no opinion on Moxley's work limitations or his prognosis. It is therefore not a "medical opinion" as that term is used in the regulations. See McDonald v. Astrue, 492 F. App'x 875, 884 (10th Cir. 2012) ("The treatment notes cited by [the claimant] do not qualify as medical opinions [because they] do not indicate any prognoses, nor do they provide opinions as to what [the claimant] could still do despite her impairments or the nature of her mental restrictions."); Terrell v. Comm'r of Soc. Sec., Civ. A. No. 12-cv-11781, 2013 WL 5178541, at *11-12 (E.D. Mich. Sept. 10, 2013). The same is true of Dr. Nelson's notes, which consist of operative reports and treatment recommendations along with Moxley's reported subjective complaints. Thus, the ALJ was not required to consider these reports as medical opinions.[5]

---

[5] Even if some portion of the reports could be classified as medical opinions, as Moxley contends, he has not explained how consideration of these portions would have affected the ALJ's decision. For example, he states that Dr. Bartko "noted the need for spinal surgery as well as the peripheral pain developed by [Moxley]." (Doc. 8 at 4.)

11

Next, Moxley contends the ALJ erred by determining that none of the severe impairments met or medically equaled a listed impairment. (Doc. 8 at 8-9.) However, Moxley bears the burden of proving that one of his impairments meets or is equivalent to one of the listed impairments. See S.R. ex rel. R.R. v. Barnhart, 371 F. Supp. 2d 796, 799 (W.D. Va. 2005). In his brief, Moxley does not identify which listed impairment his conditions were equivalent to; he merely recites that the ALJ found he had severe impairments. This is insufficient to carry his burden, and thus his argument must fail.

Moxley then argues that the ALJ committed prejudicial error by impermissibly relying upon the Medical-Vocational Guidelines to direct a finding of "not disabled." (Doc. 8 at 9-10.) But, as the Commissioner notes, the ALJ recognized that Moxley's ability to perform light work was "impeded by additional

---

But the ALJ noted that Moxley had three back surgeries after the date of Dr. Bartko's evaluation (Tr. at 17), so it is unclear how any prior need for surgery would have affected the RFC calculation. As for the pain, the ALJ credited Moxley's report in 2010 (six years after the evaluation by Dr. Bartko) that his level of pain was "quite tolerable." (Id.) Moxley also fails to explain how Dr. Nelson's treatment notes support a finding of "severe impairment" on the musculo-skeletal guidelines. This conclusory statement is insufficient to show how consideration of Dr. Nelson's notes would have changed the outcome. Thus, even if some portions of the notes qualify as medical opinions under the regulations, any error in failing to address them was harmless. Cf. Yuengal v. Astrue, No. 4:10-CV-42-FL, 2010 WL 5589102, at *8-9 (E.D.N.C. Dec. 17, 2010), adopted by 2011 WL 147297 (E.D.N.C. Jan. 18, 2011), aff'd on other grounds by 441 F. App'x 168 (4th Cir. 2011) (failure to consider a medical opinion that "does not refute the fact that substantial evidence exists supporting the ALJ's determination that Claimant is capable of working and finding that medical opinions to the contrary are entitled to minimal weight" was harmless error).

12

limitations." (Tr. at 19.) Therefore, the ALJ did not base his decision on the Guidelines, but rather solicited testimony from the VE to determine if any jobs existed in the national economy that Moxley could perform. (Id.) This was proper under the circumstances, and the ALJ was entitled to rely upon the VE's testimony. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) ("[W]hen the case is remanded, it will be incumbent upon the Secretary to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").

Next, Moxley contends that the ALJ erred by concluding that he could perform light work with certain limitations. (Doc. 8 at 6-7.) He claims the ALJ disregarded the testimony of the VE and provided no reason for rejecting the opinions of Drs. Tooke, Nelson, and Bartko. (Id.) He also asserts the ALJ did not properly account for his severe seizure disorder and that insufficient evidence exists in the record to conclude that he only needs a one to two minute stretch break per hour to perform light work. (Id. at 7.)

With respect to the opinions of the doctors, the argument is duplicative of Moxley's previous contention that the ALJ gave insufficient weight to the opinions of his treating physicians. For the reasons given above, the ALJ provided sufficient reasons

13

for rejecting the opinion of Dr. Tooke. Also, as explained above, he was not required to consider the notes of Drs. Nelson and Bartko because they do not constitute medical opinions. Moreover, substantial objective and opinion evidence supports the ALJ's RFC conclusion. Two state agency medical consultants – Drs. Elizabeth S. Hoyt and Janet Johnson-Hunter – opined that Moxley could perform light work with some limitations. (Id. at 445-52, 542-49.) Substantial objective evidence, as described above, also supports the ALJ's decision.

Moreover, the ALJ did take into account Moxley's seizure disorder in crafting the RFC but concluded that the objective evidence indicated the "seizures are well controlled." (Id. at 17.) Thus, he did not find it necessary to include a further limitation in Moxley's light-work RFC. Moxley does not argue – and he provides no citation to record evidence that would support an argument – that this determination was not based upon substantial evidence. Nor does he provide any portion of the VE's testimony he believes the ALJ ignored without explanation. The court will not search the administrative record for evidence to support Moxley's argument; he must provide a specific citation. Finally, Moxley's assertion that there is no evidence in the record to support his need for only a one to two minute stretch break is incorrect; the VE's testimony supported a deviation from the Dictionary of Occupational Titles, which does

14

not address work with a so-called "sit/stand option." (Id. at 48-49.) Thus, after consulting the VE, the ALJ properly incorporated an additional limitation into Moxley's RFC.

Next, Moxley challenges the ALJ's determination that his subjective complaints of pain and descriptions of his abilities were only partially credible. (Doc. 8 at 7-8.) Moxley states "[i]t is not rational to state that the Plaintiff's medical conditions could cause the symptoms that he discussed but then disregard his testimony." (Id. at 7.) However, he misinterprets the two-step process for assessing credibility set out in Craig. At step one, the claimant must produce "objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*.'" Craig, 76 F.3d at 594 (quoting 20 C.F.R. §§ 416.929(b), 404.1529(b)) (emphasis in original). If the claimant clears that hurdle, the ALJ then must make a credibility judgment, taking into account

> all the available evidence, including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

15

Id. at 595 (citing 20 C.F.R. §§ 416.929(c)(1)-(3), 404.1529(c)(1)-(3)) (internal quotation marks and citations omitted).

Thus, the determination at step one that Moxley's impairments could reasonably be expected to cause his alleged symptoms says nothing about the credibility of his testimony. The ALJ made that determination at step two when he determined that, considering all the evidence, Moxley's testimony was not credible to the extent it deviated from the RFC calculation. (Tr. at 16.) For example, the ALJ noted that a November 8, 2004 MRI showed minimal bulge without evidence of neural encroachment; an April 11, 2005 MRI showed very mild broad disc bulge; an October 4, 2007 CT showed no significant degenerative changes; and orthopedic and physical examinations showed normal strength in the upper and lower extremities, no sensory deficits, full range of motion of the lumbar spine, and that Moxley was "in no acute distress." (Id. at 16-17.) Follow-up visits after surgeries in 2007 and 2008, while indicating worsening reflex sympathetic dystrophy and evidence of diffuse neuropathy, found no evidence of obvious neurological impingement and noted that Moxley was not using crutches or a cane. (Id. at 17.) Furthermore, the ALJ found that, contrary to Moxley's testimony of extreme pain, on February 3, 2010, Moxley reported to his doctor that his pain was "quite

16

tolerable." (Id.)  Moxley fails to point to any evidence in the record that supports his claim; his bald assertion that "the majority of the medical evidence" (Doc. 8 at 7) supports him is inaccurate, as described above.  The ALJ's credibility determination must be afforded substantial deference by this court.  See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  Thus, no basis exists to disturb the ALJ's credibility judgment.

Finally, Moxley contends that the ALJ did not consider all of the medical and vocational evidence.  (Doc. 8 at 5-6.)  He claims that several of his impairments should have supported a finding of "disabled" under the Medical-Vocational Guidelines, but provides no citation to the Guidelines or any case to support his argument.  These conclusory statements are not sufficient to reverse the decision of the Commissioner. Moreover, as discussed above, the ALJ considered all of the objective and subjective evidence he was required to under the regulations.  This argument largely repeats Moxley's contentions regarding the RFC calculation and opinions of his treating physicians.  Thus, it provides no basis for remand.

## III. CONCLUSION

For the reasons stated, the court finds that the factual findings of the ALJ, which were adopted by the Commissioner, are supported by substantial evidence and were reached through

17

application of the correct legal standard.

IT IS THEREFORE ORDERED that Moxley's motion for judgment on the pleadings (Doc. 7) is DENIED, the Commissioner's motion for judgment on the pleadings (Doc. 10) is GRANTED, and this action is DISMISSED WITH PREJUDICE.

          /s/   Thomas D. Schroeder
        United States District Judge

May 23, 2014